**NORMAN et al. v. WATERMAN S. S. CORP.**

No. 2454.

United States District Court
S. D. Alabama, S. D.
June 18, 1952.

Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for libelants.

Inge, Twitty, Armbrecht & Jackson, Mobile, Ala., for respondent.

THOMAS, District Judge.

This cause presents a libel against the respondent as owner and operator of the S.S. Wild Ranger. Libelants seek recovery in the amount of $8,480, claiming damage to a cargo of used trucks.

On or about August 13, 1948, respondent loaded aboard the Wild Ranger at the port of San Juan, Puerto Rico, fifty-five war-surplus used army trucks, for shipment to Mobile, Alabama. The trucks were discharged in Mobile on or about August 20, 1948.

E. R. Norman, Jr., consignee in the bill of lading, in whose name the libel was originally brought, testified: That he made a trip to San Juan, at which time he inspected the trucks, prior to bidding on them, and became the successful bidder. That a longshoremen's strike was in progress in San Juan, and he was advised that the shipment could not be made until a later date. That he then employed one S. Lampon to transport the trucks approximately ten miles from their then location to dockside in San Juan, when advised by the respondent that the cargo could be loaded.

Mr. Norman then returned to the States. A week or ten days later, after being advised by the respondent, S. Lampon delivered the trucks to the dock in San Juan.

The trucks had been standing in the open, exposed to the elements, for quite some time in San Juan. The condition of the trucks varied: some had broken windshields, some had missing tires, the woodwork on some was decayed. Mr. Norman testified that, although the majority of them were in good condition, nevertheless they were used army trucks and in the condition such equipment is usually found. There was much confusion in the testimony as to the actual condition of the trucks when delivered to the dock by libelants' agent, Lampon.

The trucks were loaded aboard the ship by respondent. Thirty-five of them were stowed in the ship's holds, and twenty carried as deck cargo. In loading and discharging the trucks, slings were used, consisting of cables attached fore and aft to each side of a truck, the free ends of which cables were joined at a central pivot point above the truck; and by these slings each truck was lifted at the pivot point with a crane. In this system of loading and unloading, if proper spreaders were not used on the four lines, the cables would cut and damage the portions of the truck with which they came in contact.

When the trucks were discharged in Mobile, Norman observed their condition and immediately reported to respondent that most of them had been damaged in transit. All of the trucks were thereupon inspected in Mobile by an employee of the libelants and an employee of the respondent; and this inspection will hereafter be referred to as the Utsey inspection. Libelants insist that this inspection was for the purpose of noting exceptions on their behalf to the condition of the trucks on arrival, and that all of the damage noted was "new damage" and not "old damage". Respondent insists that in the Utsey inspection notation was made of all damage, both new and old. Captain W. S. Holmes, an independent marine surveyor, on behalf of respondent examined twenty-five of the trucks in Mobile, but did not examine the other thirty, as they had been transported to Birmingham at the time his survey was made.

Libelants are claiming damage in transit to forty-one of the trucks. Much testimony was offered by both libelants and respondent as to methods of handling the cargo in loading, stowing, and discharging. It will be noted, however, that Mr. Norman was the only person who examined the trucks on behalf of libelants prior to their shipment, and that his examination was made prior to their purchase and some ten days or more before their delivery to the dock in San Juan. There is no testimony as to the care and treatment of the trucks between the date of the examination in San Juan by Mr. Norman and the date the trucks were delivered to the dock in San Juan by libelants' agent, Lampon.

After their delivery to libelants in Mobile, half of the trucks were put in running condition, and then each of these trucks towed one of the others to Birmingham, a distance of some 250 miles.

The bill of lading had typed or stamped on its face, under "Description of Goods", the following: "Used Car, Unboxed, Not Responsible For Any Indentation, Breakage, Scratches, Etc."

Respondent set up several separate defenses, among them:

1. That the bill of lading should have effect according to the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq.; and that any loss or damage to the trucks arose or resulted from the condition of the trucks when delivered to the vessel or from inherent defect, quality or vice of the trucks or insufficiency of packing, or through omission of the shipper. (All or any of such defenses, if proved, under the terms of the Act exempt carrier and ship from liability.)

2. That the notation quoted above, which appeared on the face of the bill of lading, "Used Car, Unboxed, etc.", relieved respondent of responsibility for damage consisting of any indentation, breakage or scratches resulting from lack of packing.

For other defenses respondent set up all the possible applicable rights and immunities of carrier and ship under 46 U.S.C.A. § 1304(1–3), such as Act of God; perils, dangers, and accidents of the sea; latent defects; and due diligence in seeing that the vessel was seaworthy. Respondent also set up the defense of limitation of liability. 46 U.S.C.A. § 1304(5).

Although not set up as a special defense, respondent introduced in evidence receipts signed by E. R. Norman, Jr., for all fifty-five of the trucks. Each receipt had printed in large lettering on its face the following: "Received from Waterman Steamship Corporation in good order and condition the following goods * * *", after which the trucks were described.

Libel was filed by E. R. Norman, Jr., on August 17, 1949, less than a year after the trucks were discharged in Mobile on August 20, 1948, and within the period of limitation provided by 46 U.S.C.A. § 1303(6). On December 5, 1951, during the course of the trial, the libel was amended to conform to the evidence by adding Guy L. Burns as a party libelant, so that the libelants then became the same as shown in the present caption. Whereupon, respondent refiled its answer to the libel as thus amended, and added a further defense of the statute of limitations, basing its plea upon an alleged change of parties by libelants' amendment.

The court finds:

1. That the exact condition of each vehicle when delivered to the dock at San Juan, Puerto Rico, is unknown, as a detailed inspection was not made at that time. The last inspection before the trucks were loaded aboard ship was that made by Norman some ten days to two weeks prior to loading.

2. That during this interval of ten days to two weeks the trucks were handled by agents for libelants, and the treatment the trucks received is unknown.

3. That, after delivery to the respondent, eleven of the trucks sustained damage in transit while in custody of respondent. Respondent's witness Holmes testified that the following trucks had sustained recent damage at the time of his examination: FBB 34, FBB 28, FBB 31, and FBB 52. In writing up the report of the Utsey inspection, it was further noted of the trucks examined by Captain Holmes that FBB 68 had two bent fenders and a cut body, and that FBB 37 had a fender bent and "body cut with sling." And the following notations also were made in the Utsey inspection as to certain trucks which were not examined by Captain Holmes: FBB 35, "body cut with strap"; FBB 40, "body cut with strap"; FBB 78, "both fenders bent and cut with sling"; FBB 32, "body cut"; FBB 70, "body cut".

4. That a reasonable depreciation for each truck damaged by the respondent is $200. The only testimony as to values was that of Mr. Norman, who testified that the reasonable market value of any of the vehicles would depreciate between $200 and $300, if a substantial amount of body work was required prior to sale. Although these fifty-five vehicles were purchased in San Juan in five lots at prices ranging from $295 to $563 per truck, their reasonable market value in Birmingham, after necessary renovation, ranged from $2,250 to $2,500 each.

### Conclusions of Law

1. Plea of the statute of limitations because of alleged change in party libelants is not well founded. Admiralty Rule 23, 28 U.S.C. See also "The D. J. Sawyer", 1

Cir., 236 F. 913. (In any event, Norman, as consignee named in the bill of lading, had the right to bring the original suit.)

2. The bill of lading must be construed pursuant to the terms of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq.; and the typed or printed portion of the bill of lading: "Used Car, Unboxed, Not Responsible For Any Indentations, Breakage, Scratches, Etc.", is no defense to respondent's negligence, fault, or failure in its duties and obligations under that Act. See Section 1303(8).

3. Respondent is responsible under that Act for the loading and stowing of the trucks aboard ship, and for their unloading. Section 1303(2).

4. The Utsey survey, as well as the employment by the respondent of a marine surveyor to examine some of the trucks, is certainly sufficient to show knowledge on the part of the respondent. Such knowledge would take evidentiary precedence over the "good order and condition receipts" given by libelant Norman. It has been many times held that "A mere receipt is always open to explanation, and may be varied by parol, because it is simply an admission or declaration in writing;" save where it "embodies the elements of a contract". Milos v. Covacevich, 40 Or. 239, 66 P. 914, 916; Freiberg v. Pierce, 10 Cir., 83 F.2d 961; 1 Greenleaf on Evidence, Sec. 305.

5. The cost of repairs is not a proper element of damage. "The measure of damages recoverable from a carrier for damage to cargo through its fault is the difference between the market value of the cargo at the time and place of delivery in the condition in which it would have arrived but for the carrier's fault and its market value in the condition in which by reason of such fault it did arrive, with interest from the time of delivery." United S. S. Co. v. Haskins, 9 Cir., 181 F. 962, 965.

Accordingly, judgment will be entered awarding libelants $200 for each of the eleven trucks found to have sustained sling cuts and other new damage due to respondent's negligence, fault or failure in load-ing, stowing and unloading. To this judgment for $2,200 there will be added interest at 6% from August 28, 1948.